WALLIS, LANDES & CO. v. SCHNEIDER & DAVIS.

No. 6686.

1.   **Immaterial Testimony.**—The admission of irrelevant testimony when the same facts had been testified to by other witnesses without objection is immaterial and no ground for reversal.

2.   **Sale of Goods by Insolvent Debtor.**—Wilkerson being indebted to S. & D. agreed with their agent to sell them his stock of goods at fair price, and any residue over payment of the debt was to remain or be paid for to Wilkerson.   The agent took possession, and an invoice of the goods was made out but amount not ascertained by adding up the items.   At this stage Wallis, Landes & Co. had the goods seized under attachment.   It was proved that the value of the goods did not exceed the debt.   In suit by S. & D. for the value of the goods Wallis, Landes & Co. pleaded that the sale was in fraud of Wilkerson's creditors, etc.   *Held:*

1.   The court having charged that S. & D. could not recover unless the jury believed that all the elements of a sale had been established by the evidence, it was not error to refuse an additional instruction defining a sale, although accurate.

2.   That the sale was not completed was not raised by the attack upon it as fraudulent, and a charge allowing that as a defense was more favorable to defendants than they were entitled to.

3.   If there was not more goods sold than was required to pay the debt the sale was not fraudulent.

4. It was not error in the charge that it stated that a debtor has the right to prefer a creditor, although the effect of such preference would be to delay other creditors. The principle applied to the case.

5. The facts authorized a verdict for the plaintiffs.

Appeal from Johnson.    Tried below before Hon. J. M. Hall.

This is an appeal from a judgment for $742 and costs, rendered in favor of Schneider & Davis against Wallis, Landes & Co.    The cause of action was for damages for the conversion of a stock of goods the property of plaintiffs, and by them bought of one J. P. Wilkerson.    The defense was denial; that the goods were levied on and sold as the property of Wilkerson, who was the owner, etc.; and that the sale under which plaintiffs held was without consideration, in fraud of Wilkerson's creditors, and in pursuance of a conspiracy to defraud them between Wilkerson and the plaintiffs.    Other facts are in opinion.

*Smith & Davis* and *Bledsoe, Patton & Brown*, for appellants, cited Cleveland v. Williams, 29 Texas, 204; Wagon Works v. Tidball, 69 Texas, 161; North v. Belder, 35 Am. Dec., 85, 86; Winkler v. Hill, 31 Am. Dec., 215; McCullough v. Hutchins, 32 Am. Dec., 777.

*Poindexter & Padelford*, for appellees.—The verdict of the jury is not contrary to the law and is amply supported by the evidence.

(1)    The evidence shows that the goods in controversy had been delivered to plaintiffs and were in their possession and under their control previous to and at the time of the levy of defendants.

(2)    The uncontradicted evidence shows that the goods were purchased bona fide and for the sole purpose of paying a valid and subsisting indebtedness, and that there was no fraud whatever on the part of plaintiffs. Baldwin v. Peet, 22 Texas, 708; Greenleve, Block & Co. v. Blum, 59 Texas, 124; 1 Sayles' Civ. Stats., art. 2465, notes 7, 8.

HOBBY, Presiding Judge. — The appellees, Schneider & Davis, brought this suit against the appellants, Wallis, Landes & Co., and the sheriff of Johnson County to recover damages for the wrongful and forcible seizure of a stock of merchandise belonging to them, and which appellants converted to their own use, etc.    The value of the merchandise so seized is alleged to be $535.34.

The answer contained a general denial and a special plea alleging that the goods were levied on and taken possession of by the defendants under two writs of attachments issued in their favor on the 12th day of January, 1883, against J. P. Wilkerson.    That the claim of Schneider & Davis to the goods is based upon a pretended transfer or assignment of the same to them by said Wilkerson on said 12th day of January.    This sale, it is alleged, was made in bad faith, etc., and with the purpose of hindering

and defrauding Wilkerson's creditors, especially the appellants, which fraudulent purpose on the part of Wilkerson was well known to the appellees, etc.

The trial of the case before a jury resulted in a verdict and judgment for the plaintiffs below, Schneider & Davis, from which the appellants prosecute this appeal.

The first assignment complains of the admission of the testimony of the witness W. Poindexter over the objections of the defendants.

This witness was placed on the stand to testify for the plaintiffs, and was asked by their counsel to state "what advice he as attorney for plaintiffs gave to their agent, Craig, previous to the execution of the transfer or bill of sale by Wilkerson to Schneider & Davis." The grounds of objection were that "the question and answer thereto were irrelevant and did not tend to establish any issue in the case; and because the advice of counsel could not shield the plaintiffs from the consequences of any fraud on their part or that of Wilkerson; and also because the defendants were not shown to be present," etc. These objections were overruled. The witness testified in substance that Craig, agent of Schneider & Davis, came to his office and informed him that Wilkerson proposed to sell a sufficient quantity of goods to Schneider & Davis to cancel a debt he owed them; that he advised Craig to the effect that Wilkerson had the right to make such sale, but that he could not transfer more goods than were sufficient to pay the debt.

If the foregoing evidence was inadmissible and the objections urged to it on that ground were tenable—a question not necessary to determine—it is obvious from the proof made on the trial that it was not such error as would authorize or require a reversal of the cause.

The witness Craig had himself testified without objection fully with reference to the conference had by him with the attorneys, and as to their advice to him concerning the validity of the sale.

There are several assignments of error, based upon the court's refusal to give certain instructions requested and complaining of the general charge given. Many of these we think may be appropriately considered together.

It is urged under the fourth assignment that the court should have told the jury that "to constitute a sale there must be a vendor who sells the goods and a vendee who buys, and that there must have been something to sell, and it must have been agreed upon between the buyer and seller just what was to be sold, and it must have been separated from the same species of property and the price must have been agreed on," etc.

Again, it is insisted under the fifth assignment that the court should have charged, as was requested by defendants, that if they found Schneider & Davis had taken a bill of sale which on its face purported to buy the entire stock, when in fact they had bought only enough to satisfy

their debt and were to account to Wilkerson for any balance, the verdict should be for the defendants.

And it is claimed further that the court erred in not submitting to the jury the issue contained in the answer charging a conspiracy, etc., between plaintiffs and Wilkerson to hinder, etc., defendants in collecting their debts, etc.

Whether these assignments are well taken depends necessarily upon the case made by the proof and the law applied to the case as embraced in the general charge.

The proof showed that J. P. Wilkerson owned a small stock of goods and merchandise in the town of Cleburne, Texas. He was insolvent. He owed Schneider & Davis about $532, exclusive of interest. On the evening of January 11, 1883, E. E. Craig, their agent, called on him to collect the debt. Wilkerson told him he could not raise the money under fifteen or twenty days, and if this would not answer he proposed that Craig should take the goods. On the next morning, January 12, 1883, Craig accepted the offer and Wilkerson executed the bill of sale. Wilkerson said he understood he was to be paid any balance found to be due after the debt was paid. He thought the goods would invoice about $700.

The testimony of Craig was in substance that on the evening of January 11, 1883, he demanded of Wilkerson payment of the debt due Schneider & Davis. Wilkerson said he could not pay, and unless they would buy his goods he could not settle. They differed as to the value of the goods. Craig estimating it at about $500 and Wilkerson at $600 or $700. Craig consulted attorneys and was advised he could take enough goods to pay the debt, but not more. He also telegraphed Schneider & Davis to know if he should accept Wilkerson's proposition, and was told to do so. He had the bill of sale prepared and took it to Wilkerson, who signed it on January 12, 1883, with the understanding that the goods were to be taken at a fair price. Wilkerson delivered the key to the store house to Craig, and told him he would hold him responsible for all goods in excess of what was sufficient to pay the claim. He told Craig to get Allen Wilkerson (clerk) to assist him in taking an invoice. Craig says there was no understanding or agreement that he would pay for any goods in excess of those sufficient to pay the claim. He told Wilkinson, he testified, that the goods above what was necessary to pay the claim would remain in the store. Craig took possession of the store on the morning of January 12, immediately after the execution and delivery of the bill of sale, and commenced to invoice the goods. While so doing Wilkerson came up and asked for and obtained a receipt for the debt.

An order was also presented to Craig during the time he was taking the inventory, from Wilkerson, to pay whatever goods should remain after payment of Schneider & Davis' debt to T. G. Marsalis, whom Wilkerson

owed the sum of $125.   Craig endorsed an acceptance on this order upon condition that any goods remained over.

There was evidence to the effect that after the invoice was completed, but the prices of the goods not added up, the appellants levied on the same.   There was other testimony in substance that the invoice or list of goods had not been completed when the levy was made by appellants.

Under this state of facts the court instructed the jury that "A debtor has a right to sell his goods or any part of the same to any one of his creditors for the purpose of paying any debt he may owe such creditor in preference to other creditors, and if such sale is made with the intention of paying any creditor then such sale would be valid, although the effect of the sale might be to hinder or delay other creditors in collecting their debts, or might defeat them in collecting their debts; but if an insolvent debtor makes a sale of his goods or any part of same to one or more of his creditors for the purpose of defrauding other creditors, or of hindering or delaying creditors in the collection of their debt, and the party purchasing the goods knows of such intentions, and purchase the same with intent to aid such insolvent debtor in such wrongful act, then such purchaser would acquire no title to or interest in the goods as against the other creditors of such insolvent debtor who might seek to subject the property to the payment of their debt; but if a creditor in good faith and with the sole purpose of securing his debt purchases property from an insolvent debtor in payment of a debt due him, and if he receives no more property than may be reasonably required to discharge his debt, and the same is openly done without any concealment, such a sale will be valid in law, although the purchasing creditor may know at the time of the sale and transfer that he will prevent other creditors from enforcing their claims, and that the debtor's motives for making the sale was to pay the purchaser in preference to other creditors.

"The court instructs you that if you believe from the evidence that J. A. Wilkerson was indebted to plaintiffs as alleged in their petition, and that he sold the goods described in said petition to one Craig, as the agent of plaintiffs, for the purpose of paying said debt, if any, and that he at the time transferred said goods to said agent, if any there were, for the purpose of paying said debt and placed, as hereinafter explained, said Craig in possession of said goods, then in case you believe from the evidence that the price aforesaid was the reasonable price of the goods, you will find for the plaintiffs as damages the value of the goods at the time the same were taken from plaintiffs by the defendants, if they were so taken, and 8 per cent interest per annum upon the said value from said time to the present, and so say by your verdict.   But if you believe from the evidence that J. P. Wilkerson was indebted to plaintiffs as alleged in the petition, and that he made a transfer of his goods, by bill of sale and delivery to one Craig, as the agent of plaintiffs, and if you further find

that plaintiffs or their agent knew that said Wilkerson was insolvent, and that with such knowledge, or with a knowledge of such facts as would have put a man of ordinary prudence upon inquiry, and if the jury shall find that it was the understanding and agreement between said Wilkerson and Craig that if there were more goods than enough to pay the debt of plaintiffs then plaintiffs would pay the value of the excess to said Wilkerson, then you are instructed that such sale would in law be fraudulent as to other creditors; and if you find that said Wilkerson was at the time indebted to defendants as charged in their answer, then you will find for the defendants; and if you find that said goods had been transferred to plaintiffs' agent, and the same placed in the possession of said agent, as hereinafter explained, and that before said transfer and possession of said goods the defendants levied writs of attachment upon said goods, and that said Wilkerson was indebted to said defendants as alleged in their answer, and that said goods were sold under said writs, if any, of attachment to pay defendants' debt, if any, then in case you so believe, you will find for defendants, and so say by your verdict.

"The court instructs you that if you believe from the evidence that plaintiffs, by their agent, bought all of the goods of said Wilkerson, and that said Wilkerson placed said Craig in possession of the key to the house where said goods were stored, and that said Craig went into said house for the purpose of taking an inventory of said goods to ascertain the value of the same, then said goods would be in his possession, and said goods would not be liable for the payment of any debts which said Wilkerson may have owed other parties; but if you believe from the evidence that he had bought only a part of said goods, and he was taking an inventory of the same to ascertain what goods he would secure in payment of his debt, then there would not be in law a delivery of said goods, and the title to same would be in said Wilkerson and would be liable for his debts," etc.

The special instruction referred to in and made the basis of the fourth assignment was, we think, substantially embraced in the general charge. The court, it is true, did not give the technical definition of a sale as contained in the text books, but the charge was so framed that the jury could not have found for the plaintiffs unless they believed that all the elements of a sale had been established by the proof. That portion of the requested instruction to the effect that if Wilkerson and Craig had agreed upon the price of the goods, and Craig was to take an invoice of enough of them at the agreed price to pay the debt, and that Craig was invoicing them at the time of the levy, but had not completed the invoice and had not separated the goods invoiced from the balance, the jury would find for defendants, we think was sufficiently expressed in the general charge in which the jury were told "that if Craig, for Schneider & Davis, bought only a part of the goods, and was taking an inventory to ascertain what goods he would secure in payment of his debt, then there would not in

law be a delivery and the goods would be liable," etc.   This was a more favorable charge upon this branch of the case than the appellants were entitled to under their pleadings.   The ground of defense, as alleged in the defendants' answer to the plaintiffs' cause of action, was based upon a fraudulent sale and transfer of the goods to Schneider & Davis by Wilkerson, and not upon the ground that there was an incomplete sale by reason of a failure to deliver the goods to plaintiffs.   We do not think that the defendant's answer can be reasonably construed to present or raise this latter issue.   If, however, it is susceptible of this construction, the general charge, as above indicated, submitted the issue as fully as it was raised in the case.

The fifth assignment is that the court erred in refusing a charge that if the evidence showed that Schneider & Davis took a bill of sale which on its face purported to buy the entire stock, when in truth they bought only enough to satisfy their debt and were to account to Wilkerson for the excess, the jury would find for defendants.

The evidence, we think, shows that the entire stock of goods did not exceed in value the debt due Schneider & Davis.   Such being the case, there was no fraud in the transaction.   No other conclusion could have been reasonably reached from the testimony than that indicated by the verdict that the purpose of Schneider & Davis was to secure the payment of their claim.   There is no conflict as to this.   There was a slight difference of opinion between Wilkerson and Craig as to the value of the goods.   And it may be said that there was some conflict as to whether if an excess in the value of the goods above the amount of the debt was developed it was to be paid to Wilkerson.   Whether this be so or not was for the jury to determine.   The court upon this issue had correctly instructed the jury, and the finding upon it was adverse to appellants.

We think, therefore, that the special charge last mentioned was, as asked, not applicable to the facts, and that such portion of it as was proper had been given by the court.

Again, it is claimed that the court erred in instructing the jury that a debtor has a right to prefer a creditor, although the effect thereof would be to delay other creditors, because it presents an issue not made by the evidence in this case.   We can only say we do not concur in this view of the proof.   The facts, in our opinion, authorized the submission of this question.

The eighth, ninth, tenth, eleventh, and fifteenth assignments assail specific portions of the charge given by the court.   We do not think it necessary to consider in detail each of these assigned errors, as we have incorporated in this opinion the proof made in the case and the law applied thereto in the charge.

The proof authorized the conclusion that Wilkerson was indebted to Schneider & Davis in the sum of about $532; that Wilkerson was insolvent

on January 12, 1883, but they only knew he owed a few small debts in addition to theirs; that they purchased his stock of goods for the purpose of canceling their claim, and that the goods did not exceed in value the debt; that there was no fraud in the transaction; that defendants levied their attachment on the goods while they were in the possession of Craig, as agent for Schneider & Davis.

The jury in effect found as above indicated. The charge of the court fairly submitted the real issues made by the pleadings and the proof, and we think that no such error was committed on the trial as would justify us in reversing the judgment.

We think the judgment should be affirmed.

*Affirmed.*